1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 21, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

SHELENA B.,

      Plaintiff,

      v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

      Defendant.

No. 1:19-CV-03146-JTR

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment. ECF
Nos. 13, 14. Attorney D. James Tree represents Shelena B. (Plaintiff); Special
Assistant United States Attorney L. Jamala Edwards represents the Commissioner
of Social Security (Defendant). The parties have consented to proceed before a
magistrate judge. ECF No. 7. After reviewing the administrative record and the
briefs filed by the parties, the Court **DENIES** Plaintiff's Motion for Summary

---

[1]Andrew M. Saul is now the Commissioner of the Social Security
Administration. Accordingly, the Court substitutes Andrew M. Saul as the
Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P.
25(d).

ORDER GRANTING DEFENDANT'S MOTION - 1

Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on September 23, 2014, Tr. 91, alleging disability since May 30, 2014, Tr. 252, due to equinus, plantar fasciitis, Baxter's neuritis, carpal tunnel, attention deficit hyperactive disorder (ADHD), personality disorder, and borderline intellectual functioning, Tr. 326. The applications were denied initially and upon reconsideration. Tr. 112-16, 118-20. Administrative Law Judge (ALJ) Moria Ausems held a hearing on March 13, 2018 and heard testimony from Plaintiff and vocational expert Fred Cutler. Tr. 37-65. The ALJ issued an unfavorable decision on May 7, 2018 finding Plaintiff was not disabled from September 23, 2014 through the date of the decision. Tr. 15-27. The Appeals Council denied review on May 1, 2019. Tr. 1-5. The ALJ's May 7, 2018 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on June 26, 2019. ECF No. 1.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 27 years old at the date of application. Tr. 252. Plaintiff completed her GED in 2002. Tr. 327. Her reported work history includes the jobs of cashier, housekeeping, and laborer. *Id.* When applying for benefits Plaintiff reported that she stopped working on May 30, 2014 because of her conditions Tr. 326.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo,
deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d
1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is
not supported by substantial evidence or if it is based on legal error.  *Tackett v.
Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as
being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put
another way, substantial evidence is such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S.
389, 401 (1971).  If the evidence is susceptible to more than one rational
interpretation, the court may not substitute its judgment for that of the ALJ.
*Tackett*, 180 F.3d at 1097.  If substantial evidence supports the administrative
findings, or if conflicting evidence supports a finding of either disability or non-
disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d
1226, 1229-30 (9th Cir. 1987).  Nevertheless, a decision supported by substantial
evidence will be set aside if the proper legal standards were not applied in
weighing the evidence and making the decision.  *Brawner v. Secretary of Health
and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process
for determining whether a person is disabled.  20 C.F.R. § 416.920(a); *see Bowen
v. Yuckert*, 482 U.S. 137, 140-42 (1987).  In steps one through four, the burden of
proof rests upon the claimant to establish a prima facie case of entitlement to
disability benefits.  *Tackett*, 180 F.3d at 1098-99.  This burden is met once the
claimant establishes that physical or mental impairments prevent her from
engaging in her previous occupations.  20 C.F.R. § 416.920(a)(4).  If the claimant
cannot do her past relevant work, the ALJ proceeds to step five, and the burden
shifts to the Commissioner to show (1) the claimant can make an adjustment to
other work, and (2) the claimant can perform specific jobs that exist in the national

economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, she is found "disabled." 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On May 7, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from September 23, 2014 through the date of the decision.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 23, 2014, the date of application. Tr. 17.

At step two, the ALJ determined that Plaintiff had the following severe impairments: obesity; bilateral carpal tunnel syndrome; intermittent plantar fasciitis; acquired bilateral pes planus; borderline intellectual functioning; adjustment disorder; major depressive disorder or bipolar disorder; posttraumatic stress disorder; somatic symptom disorder; avoidant personality disorder; ADHD; methamphetamine dependence; cannabis dependence; cocaine disorder; and alcohol dependence. Tr. 17.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 19.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined that she could perform a range of light work with the following limitations:

> The claimant is precluded from using ladders, ropes, or scaffolds. The claimant is unable to balance on uneven terrain. The claimant must avoid even moderate exposure to industrial vibration sustained through the hands. The claimant is precluded from exposure to unprotected heights, dangerous machinery, or commercial driving. The claimant is limited to frequent bilateral fingering. The claimant can complete simple, routine tasks that are predictable and repetitive in nature. The

claimant could not tolerate more than brief, superficial interaction with the public, or tolerate tandem tasks with coworkers.

Tr. 20-21. The ALJ found Plaintiff had no past relevant work. Tr. 25.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of housekeeper, agricultural produce sorter, and bottling line attendant. Tr. 26. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from September 23, 2014, through the date of the ALJ's decision. Tr. 27.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by failing to properly weigh (1) the medical opinions in the record, (2) a lay witness statement, and (3) Plaintiff's symptom statements.

## DISCUSSION

### 1. Medical Opinions

Plaintiff argues that the ALJ failed to properly consider and weigh the medical opinions expressed by Mark Duris, Ph.D., Thomas Genthe, Ph.D., and Brooke Sjostrom, LMHC. ECF No. 13 at 13-18.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ

should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### A.    Mark Duris, Ph.D.

On June 24, 2014, Dr. Duris examined Plaintiff and provided an opinion to the Washington State Department of Social and Health Services (DSHS) on a Psychological/Psychiatric Evaluation form. Tr. 647-51. He diagnosed Plaintiff with methamphetamine dependence in sustained partial remission, borderline intellectual functioning, and personality disorder not otherwise specified. Tr. 649. He opined that Plaintiff had marked limitations in the abilities to complete a normal work day and work week without interruptions from psychologically based symptoms and to set realistic goals and plan independently. *Id.* He also opined that Plaintiff had moderate limitations in the abilities to communicate and perform effectively in a work setting and to maintain appropriate behavior in a work setting. *Id.* He rated the remaining basic work activities as none or mild. *Id.* He stated that Plaintiff's impairments would last nine to twelve months with available treatment. Tr. 650.

The ALJ assigned different weight to different portions of the opinion. Tr.

23.  First, the ALJ assigned partial weight to the no more than moderate limitations in the areas of communicating and performing effectively and maintaining appropriate behavior in a work setting stating the following:

> While these opinions have been incorporated into the assessment of mental residual functional capacity in this decision to a significant degree, the longitudinal medical evidence and reviewed as a whole does not establish a degree of psychological abnormality that could reasonably be considered inconsistent with an ability to maintain basic appropriate behavior and effective functioning in a work setting involving simple routine tasks and minimal interaction with others.

Tr. 23.  The ALJ then assigned no weight to the marked mental limitations in completing a normal work day and work week and setting realistic goals and planning independently stating the following:

> These check-marked opinions in this record are not supported by the relatively benign mental status findings set forth in the narrative portion of his brief report and, therefore, suggest undue reliance upon subjective allegations rather than objective medical evidence. Moreover, the conclusions in this regard are contradicted by the stable mental status findings documented by other treating and examining medical sources of record and by the claimant's independent performance of a wide range of activities of daily living.

Tr. 23-24.

Plaintiff argues that the ALJ failed to set forth any specific evidence that contradicted or undermined Dr. Duris' opinion.  ECF No. 13 at 13.  Plaintiff correctly cites to *Brown-Hunter v. Colvin*, in asserting that while the ALJ is not required to explain her decision with "ideal clarity," she is required to "set forth the reasoning behind its decisions in a way that allows for meaningful review."  806 F.3d 487,492 (9th Cir. 2015).  "A clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency."  *Id*.

ORDER GRANTING DEFENDANT'S MOTION - 7

Here, the ALJ clearly stated how the opined limitations were either incorporated or not in the residual functional capacity determination.  First, the ALJ identified the limitations in communicating and performing effectively and maintaining appropriate behavior, and found that while the limitations were present, they were not work preclusive and they were incorporated into the residual functional capacity determination as such.  Tr. 23.  These limitations were opined as moderate, which is defined on the form as "there are significant limits on the ability to perform one or more basic work activity."  Tr. 649.  The ALJ interpreted this to be consistent with a limitation to simple routine tasks that are predictable and repetitive in nature, and  no more than brief, superficial interaction with the public or tandem tasks with coworkers.  Tr. 20-21.  This is a reasonable interpretation of the moderate limitations opined.  Therefore, the Court will not disturb the ALJ's treatment of the opined moderate limitations.  *See Tackett*, 180 F.3d at 1097 (If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.).

Next, the ALJ rejected the opined marked limitations because they appeared to be premised on Plaintiff's self-reports.  Tr. 23-24.  A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  But the ALJ must provide the basis for her conclusion that the opinion was based on a claimant's self-reports.  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).  Here, the ALJ found that the limitations "are not supported by the relatively benign mental status findings set forth in the narrative portion of his brief report and, therefore, suggest undue reliance upon subjective allegations rather than objective medical evidence."  Tr. 24.  Therefore, she provided the required basis for her conclusion.  The ALJ was accurate that the examination showed rather benign findings, including a normal mental status examination.  Tr. 650-51.  Therefore, this reason is supported by substantial evidence and meets the

required specific and legitimate standard required to reject the opinion of a contradicted[2] examining psychologist.

The ALJ also stated that these marked limitations were on a check-mark form. Tr. 23. The Ninth Circuit has expressed a preference for narrative opinions over opinions expressed on a check-the-box form. *See Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). However, check-the-box forms that do not stand alone, but are supported by records should be "entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). Here, the ALJ simply commented that the opinion was on a check-mark form, but did not conclude this was a reason to reject the opinion. Therefore, this comment by the ALJ fails to meet the specific and legitimate standard.

Additionally, the ALJ found that these marked limitations were inconsistent with the other evidence in the record and Plaintiff's reported activities. Inconsistency with the majority of objective evidence is a specific and legitimate reason for rejecting physician's opinions, *Batson*, 359 F.3d at 1195, and a claimant's testimony about her daily activities may be seen as inconsistent with the presence of a disabling condition, *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). However, here the ALJ failed to set forth what evidence undermined the opinion and what activities demonstrated Plaintiff was more capable than opined. Therefore, these reasons also fall short of the specific and legitimate standard.

Since the ALJ provided at least one specific and legitimate reason for rejecting the opined marked limitations, the Court will not disturb her treatment of the opinion. *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate

_____

[2]The opined marked limitations are contradicted by the opinions of James Bailey, Ph.D., Tr. 86-88, and John F. Robinson, Ph.D., Tr. 102-03.

ORDER GRANTING DEFENDANT'S MOTION - 9

1  nondisability determination.").

2  **B.    Thomas Genthe, Ph.D.**

3  On August 13, 2014, Dr. Genthe examined Plaintiff and completed a

4  Psychological/Psychiatric Evaluation for DSHS.  Tr. 652-60.  He diagnosed

5  Plaintiff with ADHD, methamphetamine use disorder in sustained remission,

6  cannabis use disorder in sustained remission, and alcohol use disorder in sustained

7  remission.  Tr. 654.  He opined that Plaintiff had a marked limitation in the

8  abilities to perform routine tasks without special supervision, to complete a normal

9  work day and work week without interruptions from psychologically based

10  symptoms, to maintain appropriate behavior in a work setting, and to set realistic

11  goals and plan independently.  Tr. 654-55.  He also opined that Plaintiff had a

12  moderate limitation in seven additional areas of basic work activity.  *Id*.  He

13  concluded the opinion as follows:

14
15  > At this time, she is unlikely to function adequately in a work setting
   > until her psychological symptoms have been managed more effectively.
16  > Given her response to treatment, and willing participation, a period of
   > 4-6 months may likely be sufficient to address her treatment needs at
17  > least moderately well, and help her regain the necessary emotional
   > functioning to resume fulltime work related activities.
18

19  Tr. 655.

20  Dr. Genthe examined Plaintiff a second time on June 6, 2017 and completed

21  a second Psychological/Psychiatric Evaluation form for DSHS on June 14, 2017.

22  Tr. 873-81.  He opined Plaintiff had a severe limitation in the ability to adapt to

23  changes in a routine work setting and a marked limitation in the abilities to

24  understand, remember, and persist in tasks by following detailed instructions, to

25  perform activities within a schedule, maintain regular attendance, and be punctual

26  within customary tolerances without special supervision, to learn new tasks, to

27  maintain appropriate behavior in a work setting, and to complete a normal work

28  day and work week without interruptions from psychologically based symptoms.

Tr. 876-77.  He opined that Plaintiff had a moderate limitation in the remaining seven basic work activities.  *Id*.  He ended this opinion with the following statement:

> At this time, [Plaintiff] is unlikely to function adequately in a work setting until her psychological symptoms have been managed more effectively.  Given her response to treatment, and willing participation, a period of nine months may likely be sufficient to address her treatment needs at least moderately well, and help her regain the necessary emotional functioning to resume fulltime work related activities.

Tr. 877.

The ALJ stated that the 2014 opinion was "largely reiterated in his 2017 assessment," and gave the opinions partial weight stating the following:

> Although Dr. Genthe's [sic] indicated the claimant was markedly limited in multiple areas, he conceded lack of treatment was a major factor, and opined the claimant's impairments would not be of such severity if she were properly treated, subsiding as quickly as four months.  This is generally consistent with the claimant's own indication treatment improved her symptoms, and is reasonably consistent with overall moderate limitations when treated.

Tr. 24.

Generally, the fact that a condition can be remedied by medication is a legitimate reason for discrediting an opinion.  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).  Failure to follow a course of treatment may be excused, however, if the claimant's noncompliance is attributable to her mental illness, *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  Plaintiff argues that the ALJ ignored Dr. Genthe's opinion that she was unlikely to follow through with treatment due to her poor insight and understanding about her condition.  ECF No. 13 at 16-17.  However, Dr. Genthe does not appear to attribute Plaintiff's lack of treatment to poor insight and

understanding at her first evaluation: "Her insight about her clinical issues and treatment options was assessed as fair," Tr. 656.  By the second evaluation, Dr. Genthe found that Plaintiff's level of understanding about the factors contributing to her illness was poor, her level of understanding of her need for treatment was poor, and the potential that she would be treatment compliant was fair to poor.  Tr. 880.  Despite this statement, Dr. Genthe found Plaintiff's prognosis as fair and opined that a period of nine months may be sufficient to address her treatment needs and allow her to resume fulltime work.  Tr. 877.  Therefore, the ALJ's conclusion that the opined limitations would improve with treatment is a reasonable interpretation of the evidence.  The Court will not disturb the ALJ's treatment of Dr. Genthe's opinions.  *Tackett*, 180 F.3d at 1097 (If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ).

## C.    Brooke Sjostrom, LMHC

The record includes a Psychological/Psychiatric Evaluation form authorizing Brooke Sjostrom, LMHC to release Plaintiff's records and indicating that an evaluation was performed on September 22, 2015.  Tr. 864-72.  The form includes an opinion stating that Plaintiff had a marked limitation in the abilities to set realistic goals and plan independently and a moderate limitation in the abilities to understand, remember, and persist in tasks by following detailed instructions,  to communicate and perform effectively in a work setting, to maintain appropriate behavior in a work setting, and to complete a normal work day and work week without interruptions from psychologically based symptoms.  Tr. 868.  The opinion concluded with the following statement:

> At this time, symptoms do not appear severe enough that they would preclude [Plaintiff] from being able to participate in an entry-level employment setting.  However, it is recommended that in addition to counseling, she be referred for psychotropic medication management

of mood and ADHD symptoms as they could potentially interfere with her reliability and ability to attend to the duties and responsibilities of a job.

Tr. 869.  This form required the explaining professional's signature and includes a signature by Brooke Sjostrom and Dr. Genthe.  Tr. 869.

The ALJ attributed the opinion to Brooke Sjostrom and gave it "considerable weight" finding it "is supportive of the assigned residual functional capacity."  Tr. 24.  Plaintiff argues that while Brooke Sjostrom's opinion does not preclude entry-level employment, the ALJ overlooked her opinion that Plaintiff's ability to maintain employment was compromised citing to her statement recommending Plaintiff "be referred for psychotropic medication management of mood and ADHD symptoms as they could potentially interfere with her reliability and ability to attend to the duties and responsibilities of a job."  ECF No. 13 at 17 *citing* Tr. 869.

Plaintiff's argument amounts to a different interpretation of the statement.  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097.  The ALJ read Brooke Sjostrom's statement to be that Plaintiff could perform work with some potential difficulties, which is consistent with the residual functional capacity determination in the ALJ's decision.  Tr. 24.  Plaintiff argues that the statement amounts to a finding that while Plaintiff could obtain a job, her impairments prevented her from sustaining or maintaining such employment.  ECF No. 13 at 17.  Both are reasonable interpretations of the opinion.  Therefore, the Court will not disturb the ALJ's determination.

**2.    Lay Witness Statements**

Plaintiff argues that the ALJ failed to properly weigh the evidence submitted from her former foster parent.

On November 3, 2014, Plaintiff's former foster parent completed a third

party function report stating that he spent about ten hours a week with Plaintiff and had adopted three of her children. Tr. 341. The report includes statements referencing Plaintiff's difficulty with her moods and these moods affecting her personal care, her ability to concentrate, her ability to complete tasks, and her ability to get along with others. Tr. 341-48. The ALJ gave the third party function report only partial weight for two reasons: (1) "the close relationships between these people and the claimant, and the possibility that the reports were influenced in favor of the claimant by a desire to help the claimant cannot be entirely ignored"; and (2) "the claimant's abilities, as demonstrated by her activities of daily life and physical examination findings, do not show a greater limitation than assigned." Tr. 22.

"[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050 (9th Cir. 2006). To reject evidence from a lay witness, the ALJ "must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 919.

Plaintiff challenges the ALJ's first reason for rejecting the statements, that the veracity of the lay witness is undermined by his close relationship to Plaintiff, by arguing that the ALJ failed to set forth any evidence that the former foster parent was anything "but objective in his observations." ECF No. 13 at 19. The Ninth Circuit has found that a close relationship with and a desire to help a claimant is a proper basis for rejecting lay whiteness testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). This is in contrast to the Ninth Circuit finding that "[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony." *Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). Courts have distinguished between these cases by finding that a close

relationship cannot be the *sole* reason a lay witness's statements are rejected.  *See Rolland v. Colvin*, Case No. 2:15-cv-103-RMP, 2006 WL 1180198 (E.D. Wash. March 25, 2016).

Here, the ALJ provided a second reason for rejecting the witness statements, that "the claimant's abilities, as demonstrated by her activities of daily life and physical examination findings, do not show a greater limitation than assigned."  Tr. 22.  Plaintiff failed to challenge this reason.  ECF Nos. 13, 15.  Therefore, the Court is not required to address the issue further.  *See Carmickle v. Comm'r., Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).  The Ninth Circuit explained the necessity for providing specific argument:

> The art of advocacy is not one of mystery.  Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.  Particularly on appeal, we have held firm against considering arguments that are not briefed.  But the term "brief" in the appellate context does not mean opaque nor is it an exercise in issue spotting.  However much we may importune lawyers to be brief and to get to the point, we have never suggested that they skip the substance of their argument in order to do so.  It is no accident that the Federal Rules of Appellate Procedure require the opening brief to contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A).  We require contentions to be accompanied by reasons.

*Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003)[3].  Moreover, the Ninth Circuit has repeatedly admonished that the court will not "manufacture arguments for an appellant" and therefore will not consider claims that were not actually argued in appellant's opening brief.  *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994).  Without finding that rejecting

---

[3]Under the current version of the Federal Rules of Appellate Procedure, the appropriate citation would be to FED. R. APP. P. 28(a)(8)(A).

ORDER GRANTING DEFENDANT'S MOTION - 15

the statements because of the close relationship between Plaintiff and the witness constituted an error, the Court finds that by failing to challenge the second reason Plaintiff effectively waived the issue.

**3.    Plaintiff's Symptom Statements**

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements were unreliable. ECF Nos. 13 at 9-12, 15.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 22. The ALJ then provided the following four reasons for rejecting Plaintiff's symptom statements: (1) Plaintiff's "level of activity is minimally limited, and cannot be reconciled with the considerable severity alleged"; (2) Plaintiff's "significant history of noncompliance with treatment recommendations" suggests Plaintiff's limitations are less than alleged; (3) there was evidence Plaintiff had over-reported symptoms or malingered; and (4) the reported severity was not supported by the objective physical evidence. Tr. 22-23.

The ALJ's first reason for rejecting Plaintiff's symptom statements, that Plaintiff's level of activity was inconsistent with her reported severity of symptoms, is not specific, clear and convincing. A claimant's daily activities may

support rejecting her symptom statements if (1) the claimant's activities contradict her other testimony, or (2) "the claimant is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)).  A claimant need not be "utterly incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.

Here, the ALJ found that Plaintiff's reported level of activity was minimally limited and "cannot be reconciled with the considerable severity alleged.  Many of the activities the claimant performs are similar to activities performed in a variety of occupations."  Tr. 22.  The ALJ cited Plaintiff's activities of providing childcare for her infant, performing self-care, prepping meals, performing household chores, driving, leaving her home, and shopping.  *Id*.  While the ALJ concluded that these activities are similar to those performed in several occupations, she did not address the frequency Plaintiff performed these activities when compared to the frequency they would be required in a work setting.  This is insufficient to meet the specific, clear and convincing standard.  *Garrison*, 759 F.3d at 1016 ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.")

The ALJ's second reason for rejecting Plaintiff's symptom statements, that Plaintiff's noncompliance with treatment was inconsistent with her reported severity of symptoms, is specific, clear and convincing.  Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints.  20 C.F.R. §

416.930; *Fair*, 885 F.2d at 603; *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (finding the ALJ's decision to reject the claimant's subjective pain testimony was supported by the fact that claimant was not taking pain medication). The ALJ provided multiple locations in the record demonstrating Plaintiff failed to take medications and follow through with treatment and found that Plaintiff "has not put forth full effort in retaining or recouping functional capacity," and "this evidence suggest the claimant's limitations are less than alleged, as one would expect strict compliance with medical directives given the alleged severity of symptoms." Tr. 22.

First, Plaintiff argues that the ALJ was required to consider her reasons for noncompliance. ECF No. 13 at 10-11. However, Plaintiff did not present any reason for noncompliance to the ALJ. In fact, at the hearing, she testified that "I have done my work trying to help myself." Tr. 56. In her briefing, she points to a single treatment note stating that Plaintiff "did not tolerate oral prednisone well," but it did not state that was a reason she refused a steroid injection. Tr. 669.

Second, Plaintiff argues that the ALJ should not have rejected her symptom statements regarding her mental health due to a lack of treatment. ECF No. 13 at 11 *citing Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (it is a "questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."). Regardless, this does not negate Plaintiff's unexplained reasons for failing to follow through with treating her reported physical symptoms, especially those causing pain. Therefore, Plaintiff's failure to follow prescribed treatment is a specific, clear and convincing reason to reject her physical symptom statements.

The ALJ's third reason for rejecting Plaintiff's symptom statements, that there was evidence she had over-reported her symptoms or malingered, is specific, clear and convincing. A finding that plaintiff engages in exaggeration is a valid reason to reject a claimant's allegations of severity of symptoms. *See Tonapetyan*

1    *v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).   A September 29, 2016 evaluation
2    included personality tests that "raise[d] concerns about over-reporting and possible
3    malingering."  Tr. 827.  The ALJ cited the 2014 evaluation by Dr. Genthe, which
4    included a Personality Assessment Inventory that indicated a possibility "that the
5    clinical scales may overrepresent or exaggerate the actual degree of
6    psychopathology," and that Plaintiff "tended to endorse items that present an
7    unfavorable impression or represent extremely bizarre and unlikely symptoms."
8    Tr. 658.  Additionally, the ALJ cited an April 1, 2010 evaluation by Dr. Genthe in
9    which he stated that "[f]rom the get go, [Plaintiff] had a poor attitude, making
10   grimaces when asked to complete some paperwork.  She was overall uncooperative
11   and argumentative.  She would not clearly answer questions, provide support for
12   claims she made, or question the need for some of the questions asked."  Tr. 501.
13   Dr. Genthe thought that Plaintiff may have been under the influence of something
14   and refused to provide a diagnosis.  *Id*.  While the ALJ did not make a finding of
15   malingering, which requires affirmative evidence, *Smolen*, 80 F.3d at 1283-84, she
16   provided multiple citations to the record demonstrating that Plaintiff was over-
17   reporting in her personality testing.  Therefore, the ALJ's reason is supported by
18   substantial evidence and meets the specific, clear and convincing standard.

19           The ALJ's fourth reason for rejecting Plaintiff's symptom statements, that
20   the objective physical evidence did not support the reported severity of symptoms,
21   is specific, clear and convincing.  Objective medical evidence is a "relevant factor
22   in determining the severity of the claimant's pain and its disabling effects," but it
23   cannot serve as the only reason for rejecting a claimant's credibility.  *Rollins v.
24   Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  Specifically, the ALJ relied upon
25   Plaintiff's normal nerve conduction studies as undermining her complaints of hand
26   and wrist pain.  Tr. 23 *citing* Tr. 669.  Additionally, the ALJ found that despite
27   complaints of foot pain, Plaintiff's gait was normal in the record.  *Id*. *citing* Tr.
28   499, 670, 836, 845, 1178, 1204.  The ALJ acknowledged that the normal gait

observations were not universal throughout the record, but they did call into question Plaintiff's testimony regarding the persistence of her symptoms. Tr. 23. Here, the ALJ provided specific citations to the record that undermined Plaintiff's reported severity and persistence of symptoms. Therefore, this reason meets the specific, clear and convincing standard.

In conclusion, the ALJ provided specific, clear and convincing reasons to support her determination that Plaintiff's symptom statements were unreliable. *See Carmickle,* 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED July 21, 2020.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE